(No. 2957—

L. BALKIN BUILDER, INC., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 14, 1939.*

*Rehearing denied February 13, 1941.*

D'ANCONA, PFLAUM & KOHLSAAT, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The claimant filed its complaint with the Clerk of this court on August 26, 1936, and alleged that on or about the 8th day of October, 1935, the respondent, through its proper officers awarded to the claimant, a certain written contract for the construction of a public improvement known as State Bond Issue, Route 50, Section 101—SB—NRH 1, which contract was duly accepted by the claimant, a copy thereof being attached to the complaint; that in pursuance of said contract, the claimant performed and completed all of the work as was required to be done by said contract and the plans, specifications and amendments thereto; that the respondent, acting through its proper officers, on or about the 15th day of April, 1936, requested and directed the claimant to perform and complete additional and extra work for the public improvement as aforesaid, which extra and additional work was not required to be performed according to the terms of the contract, plans, specifications and amendments; that said extra and additional work consisted of excavating and backfilling a crib wall, and the furnishing of an asphalt plank together with the pumping and drainage of water from said public improvement; that thereafter, pursuant to the authorization, direction and in accordance with the special instance and request of the respondent, through its proper officers, the claimant excavated and backfilled the said crib wall, furnished and completed the asphalt plank, and pumped and drained the water from said public improvement; that the fair, reasonable and customary charge for said additional and extra work was the sum of $6,022.57.

The common counts are attached under Paragraph 4.

Claimant further charges that there is due and owing to the claimant from the respondent the said sum of $6,022.57, which claim has been presented to the Department of Public Works and Buildings, Division of Highways of the State of Illinois, but the State has failed and refused to pay that sum.

An affidavit is attached to the complaint, signed by L. Balkin, president of L. Balkin Builders, Inc. In this affidavit he says he has full and complete knowledge of all the facts and that the facts contained in the complaint are true to the best of his knowledge and that the State of Illinois is indebted to the claimant in the sum hereinabove mentioned.

A copy of the contract attached to the complaint is as follows::

"CONTRACT

1. THIS AGREEMENT, made and concluded this 8th day of October, 1934, between the State of Illinois, acting by and through the Department of Public Works and Buildings, known as the party of the first part, and L. Balkin, Bldr. Inc. his/their executors, administrators, successors or assigns, known as the party of the second part.

2. WITNESSETH: That for and in consideration of the payments and agreements mentioned in the Proposal hereto attached, to be made and performed by the party of the first part, and according to the terms expressed in the Bond referring to these presents, the party of the second part agrees with said party of the first part at his/their own proper cost and expense to do all the work, furnish all materials and all labor necessary to complete the work in accordance with the plans and specifications hereinafter described, and in full compliance with all of the terms of this agreement and the requirements of the Engineer under it.

3. And it is also understood and agreed that the Notice to Contractors, Special Provisions, Proposal, and Contract Bond, hereto attached, and the Plans for State Bond Issue Route No. 50 Federal Aid Project No. 141D-NRH, Section 101SBNRH-1, in Cook County, dated March 22, 1934, and the "Standard Specifications for Road and Bridge Construction," adopted by said Department January 2, 1932, are all essential documents of this contract and are a part hereof.

4. IN WITNESS WHEREOF, The said parties have executed these presents on the date above mentioned.

THE STATE OF ILLINOIS,
By the Department of Public Works and Buildings
By ROBERT KINGERY, Director.

ATTEST:                        Party of the First Part.
    ERNEST LIEBERMAN,       (If a corporation)
*Acting Superintendent of Highways.*

Corporate
Name      L. BALKIN BUILDER, INC.
By L. BALKIN, *President.*

ATTEST:                        Party of the Second Part.
    H. B. BALKIN, *Secretary.*   (If a co-partnership)

............................(SEAL)
............................(SEAL)
............................(SEAL)

(Corporate Seal)         Partners doing business under the firm name of

............................(SEAL)"

The above, consisting of four pages and the signatures thereto, is all that is attached to the complaint, but it is obvious that there are other writings, consisting of plans, speci-

fications and special provisions that are made a part of the contract by special reference, but not copied therein.

The respondent made a motion to dismiss and filed this motion on December 6, 1938. The evidence was filed in this case on November 3, 1938. As grounds for the motion to dismiss it is contended that the claimant has no claim against the State of Illinois arising under the contract referred to in the complaint for reasons not appearing upon the face of claimant's complaint but appearing from an affidavit attached to the motion to dismiss in support of said motion; that it appears that on October 1, 1934, the claimant made and executed an assignment to the Duffin Iron Company of all its right, title and interest to the sum of $33,986.94, and in and to any and all monies owing, payable and thereafter becoming due or payable to the claimant from the State of Illinois under the contract referred to in the complaint. The affidavit attached to the motion to dismiss was made by M. K. Lingle, Engineer of Claims, Division of Highways, Department of Public Works and Buildings, State of Illinois, and he states that there is attached to his affidavit, a true and correct copy of an instrument executed by L. Balkin Builder, Inc., under date of October 1, 1934, and that the contract mentioned and referred to therein is the same contract mentioned and referred to in the complaint filed in the Court of Claims in this case; that said instrument is in words and figures as follows, to wit:

"ASSIGNMENT

"For and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations to the undersigned in hand paid, receipt whereof is hereby acknowledged, the undersigned, L. BALKIN BUILDER, INC., does hereby assign, transfer, set over and convey unto Duffin Iron Company, an Illinois corporation, all of its right, title and interest in and to the sum of Thirty-three Thousand Nine Hundred Eighty-six and 94/100 Dollars ($33,986.94), and in and to any and all moneys owing, payable or hereafter becoming due or payable to the undersigned, L. Balkin Builder, Inc. from the State of Illinois, Department of Public Works and Buildings, Division of Highways, under the contract, State No. 5710, entered into by the State of Illinois, acting through the Department of Public Works and Buildings, with the undersigned L. Balkin Builder, Inc. for the construction of the work designated as State Bond Issue Route 50, Project 141D-NRH, Section 101-SB-NRH-1, Cook County, Illinois, including the construction of one plate girder railroad subway structure, one span, at 70' 9", near the intersection of Cicero Avenue and 158th Street in Oak Forest, reference to which contract hereby made a part hereof is hereby made for a full statement of the terms thereof.

"The undersigned does hereby expressly authorize and empower the said Duffin Iron Company to collect and receipt upon said contract from the said State of Illinois in the place and stead of the undersigned the said sum of Thirty-three Thousand Nine Hundred Eighty-six and 94/100 Dollars ($33,986.94) and any other moneys owing, payable or hereafter becoming due or payable to the undersigned under said contract, and to take all necessary proceedings for the collection thereof, and to execute and deliver all proper receipts and vouchers therefor the same as the undersigned might or could do were this assignment not made. The undersigned hereby expressly represents that it has full power and authority to execute this assignment; that the said sum of money is to become due the undersigned from the said State of Illinois by reason of the said contract; that no assignment or transfer of the moneys to become due upon said contract other than the assignment embodied in this instrument has been executed by the undersigned; and the said State of Illinois, Department of Public Works and Buildings, Division of Highways, and each and every of them are hereby authorized and directed to pay to the said Duffin Iron Company the said sums of money above mentioned.

IN WITNESS WHEREOF the undersigned has caused these presents to be signed at Chicago, Illinois, by its corporate officers, and its corporate seal to be affixed thereto, both being duly authorized so to do pursuant to resolutions unanimously adopted by the Board of Directors of the undersigned, this first day of October, 1934.

L. BALKIN BUILDER, INC.,<br>By (Signed) L. BALKIN, <em>Pres.</em>

(SEAL)

ATTEST:

(Signed) H. B. BALKIN, *Sec.*

STATE OF ILLINOIS, ⎱
                    ⎰ ss.
COUNTY OF COOK

I, Joseph Harrow, a Notary Public in and for the County and State aforesaid, do hereby certify that Louis Balkin, personally known to me to be the President, and H. B. Balkin personally known to me to be the Secretary of L. Balkin Builder, Inc., an Illinois corporation, personally known to me to be the President and Secretary respectively of said L. Balkin Builder, Inc., appeared before me this day in person and severally acknowledged that they signed the said instrument and caused the corporate seal of said corporation to be affixed thereto, as their free and voluntary act individually and as such President and Secretary respectively, and as the free and voluntary act of said corporation, for the uses and purposes therein set forth, and that the execution and delivery of said instrument was duly authorized by them as such President and Secretary respectively, and duly authorized by the unanimous resolution of the Board of Directors of said L. Balkin Building, Inc.

Given under my hand and Notarial seal, this 1st day of October, 1934.
(SEAL)

(Signed) JOSEPH HARROW, <em>Notary Public.</em>"

In paragraph 5 of the complaint it is alleged that "no other persons, firm or corporation has any title or interest in and to the said claim or any part thereof, and that

the claimant is still the sole owner and claimer of said claim.'' Claimant argues that this motion comes too late to be given consideration by this court because it was not filed for more than two years after the filing of the claim herein. While this court has no such rule governing the same, the rules of this court do make the Illinois Practice Act a part of the rules. The claimant says that no contention is being made that the claimant did not assign to the Duffin Iron Company the sum of $33,986.94, together with any and all other moneys owing, payable or thereafter become due or payable to the claimant under the contract, but claimant points out and argues that the amount now being claimed by the claimant is not for moneys due and payable under the contract, but for moneys due and payable for extra work, labor and material furnished and performed by the claimant, not under the contract. Claimant argues that the motion should not be considered by the court because it was not presented in due time and therefore the motion should be stricken from the records. Another ground urged by the claimant is that the motion is not well founded, either in point of fact or in point of law; that while it is true that the claimant did under date of October 1, 1934, execute and deliver an assignment to the Duffin Iron Company, it did not assign this particular claim which arose out of special work.

As we view this matter, the only real contention between the parties hereto is whether or not the work, labor and material which the claimant admittedly furnished, was included in the orginal contract between the parties, or was, strictly speaking, extra work, the claimant taking the position that it was strictly extra work, whereas the respondent claims that the original contract required the claimant to do the work.

Under the view that we take of the case, it will be unnecessary to pass upon the motion of the State to dismiss on the grounds that an assignment of claimant's interest had been made. All the time the claimant knew that the claim had been assigned, and secondly, it charged in its complaint that no other person, firm or corporation had any right, title or interest in and to this claim, because it necessarily goes back as to what constituted the extra work herein.

This project was located in the general vicinity of 158th Street and Cicero Avenue in the Village of Oak Forest. It appears from the files that the structure was designed by the

Chicago, Rock Island and Pacific Railway; that the letting, award, engineering supervision, estimates and payments thereof and final payments were made by the State of Illinois, Department of Public Works and Buildings, Division of Highways. The letting of said project was held on April 18, 1934, and the claimant was determined the low bidder. The contract was awarded on August 15, 1934, at the bid price of $33,986.94, and according to that part of the complaint referred to as the contract and attached to the complaint the claimant agreed at its "own proper cost and expense to do all the work, furnish all materials and all labor necessary to complete the work in accordance with the plans and specifications hereinafter described, and in full compliance with all of the terms of this agreement and the requirements of the Engineer under it. And it also understood and agreed that the Notice to Contractors, Special Provisions, Proposal, and contract Bond, hereto attached, and the plans for State Bond Issue Route No. 50 Federal Aid Project No. 141D-NRH, Section 101SBNRH-1, in Cook County, dated March 22, 1934, and the "Standard Specifications for Road and Bridge Construction," adopted by said Department January 2, 1932, are all essential documents of this contract and are a part hereof."

It is contended that the additional or extra work performed by the claimant and the additional or extra materials furnished by the claimant may generally be classified under the three following classifications:

| | | | |
|---|---|---:|---:|
| 1. | Drainage and pumping | | $3,852.91 |
| 2. | Excavating and backfilling behind crib walls: | | |
| | Excavating | $312.05 | |
| | Backfilling | 550.69 | |
| | | | 862.74 |
| 3. | Asphalt planking | | 1,308.92 |
| | or a total of | | $6,024.57 |

and an award is sought upon the basis that the three items above mentioned constitute extra work.

The Standard Specifications for Road and Bridge Construction, adopted January 2, 1932, the revisions of and additions to the Standard Specifications, adopted March 27, 1934, Special Provisions, General Plans for Proposed Undergrade Crossing, and the Notice to Contractors, etc. were all made a part of the contract. The contract is quite lengthy,

consisting of some thiry-five pages, and we find therein, the following:

"4. The undersigned further declares that he has carefully examined the proposal, plans, specifications, form of contract, and contract bond, and special provisions (if any), and that he has inspected in detail the site of the proposed work, and that he has familiarized himself with all of the local conditions affecting the contract and the detailed requirements of construction, and understands that in making this proposal he waives all right to plead any misunderstanding regarding the same.

5. The undersigned further understands and agrees that if this proposal is accepted he is to furnish and provide all necessary machinery, tools, apparatus and other means of construction, and to do all of the work, and to furnish all of the materials specified in the contract, except such materials as are to be furnished by the Department, in the manner and at the time therein prescribed, and in accordance with the requirements therein set forth.

6. The undersigned declares that he understands that the quantities mentioned are approximate only and that they are subject to increase or decrease; that he will take in full payment therefor the amount of the summation of the actual quantities, as finally determined, multiplied by the unit prices shown in the schedule of prices contained herein."

The first claim for extra work is classified as "Drainage and pumping" and the amount asked for is $3852.91. Section 21 of Claimant's Exhibit "1B" provides as follows:

"The Contractor shall provide and maintain proper drainage for the excavation as the work progresses so that all rain water and surface drainage may be diverted, thus permitting the excavation to be carried on in dry material. Whenever water is encountered the same shall be removed by bailing or pumping, great care being taken at all times that the surrounding soil is not disturbed or moved."

This provision clearly provides for the bailing or pumping of water and proper drainage for the excavation of any work, and under the provisions of Section 4 of the Standard Specifications for Road and Bridge Construction hereinabove quoted, we fail to see how there could have been any misapprehension in this regard.

The next item claimed is for excavating and backfilling behind crib walls. The charge for excavating is fixed at $312.05 and the charge for backfilling at $550.69. Section 22 of Claimant's Exhibit "1B" provides as follows:

"All excavations shall be made to the full dimensions and depths shown on the plans or as directed by the Engineer. If the foundation is rock it shall be cleaned of all shale and loose stone, leveled and finished as may be directed by the Engineer."

No contention is made that the Engineer directed any excavations not provided under the Plans and Specifications.

Sections 27, 28 and 29 of Claimant's Exhibit "1B" are as follows:

"27. Excavation around all retaining walls, abutments and wings shall be backfilled to the surface of the ground adjoining with material which in the opinion of the Engineer is suitable for that purpose. When required by the Engineer, the backfill shall be deposited in layers not more than eight (8) inches deep and each layer thoroughly tamped and wetted down.

"28. The area of excavation shall be kept free from water, if practicable, until the concrete or masonry has been carried above the water level.

"29. The Railway Company shall furnish the material for the backfill behind the abutments and shall place the said material in position."

Then follows a provision concerning the part to be excavated by the Railway Company, under Section 30 of this same exhibit, which is as follows:

"30. The Railway Company shall excavate only sufficient material from the Railway Company's embankment to permit the deck of the temporary trestles to be placed."

Under the terms of the Plans and Specifications as outlined in Claimant's Exhibit "1B" it was claimant's job to construct a complete permanent bridge structure, including the concrete cribbing. It had nothing to do with the grading of the roadway, including the excavation of the railway embankment, the paving of the roadway, and the installation of the roadway drainage system, as that work was to be performed under another contract as set out under said Claimant's Exhibit "1B".

The president of the claimant company testified that the State had let a contract for the excavating work, the general excavation, and that claimant assumed that all of the excavation because of its nature requiring heavy equipment, would be entirely done by the State Highway Department. It appears that this was not the case; that they did not excavate enough to permit the cribbing to be installed. While this is not all of that part of his testimony, it is sufficient to show that his assumption was erroneous. This witness also stated that the specifications provided that the claimant was to do the excavating for the abutment and wing wall foundations. Having quoted from the Plans and Specifications, the proposal and the contract, we cannot agree that the excavating and backfilling, which is the subject of this particular part of the claim, is in no way inserted or intimated in the contract or specifications.

It is claimed that there were errors not only in the specifications, but likewise in the plans, regarding the requirements of the waterproofing, and the attention of the District Engineer's office was called thereto, and Mr. Dillon, one of the Engineers, told claimant to take the plans and specifications to the Rock Island Railroad and find out what they actually wanted.

There was also a claim for extra compensation, which covers the furnishing and installing of the asphalt plank. Mr. Balkin the president of the claimant was not present at a conference with Mr. Dillon, possibly Mr. Walters and others, but he testified as to what the various people who were present at this conference had said. At that time Mr. Corre, manager of the Rock Island Railroad explained that their specification "membrane waterproofing" was a misnomer and that an error had been made in calling that "membrane waterproofing" specification, and what they really intended was the "bridge deck" specification, and the witness said that the difference would be that the inch and a half Creosote plank and the asphalt plank would be out.

On the very first page of the plans for this job, under the heading of summary of quantities, we find the work to be contracted by the State included 23,341 BM Deck Timber Creosoted in 3,900 sq. ft. of waterproofing (membrane). On sheet No. 25 we find the same proportions. These are on the blue prints. In the "Schedule of Prices" in the contract signed by claimant there appears the item "Deck Timber (Creosoted), "23,341 ft. B. M. amounting to $2380.78 and 3,900 sq. ft. of Waterproofing (Membrane). This item is filled in at $585.00. The witness testified that their bid covered membrane waterproofing only. The witness also testified that at this conference they were asked to proceed and the State Highway Department under date of April 20, 1935 addressed a letter to claimant which is in evidence as Claimant's Exhibit 10, and we quote therefrom:

"In answer to your letters of March 19 and March 26 regarding discrepancies in waterproofing items in connection with the above mentioned project, I wish to state to you that we are passing the information regarding the membrance waterproofing and the asphalt plank items, together with the deck timber items to our Springfield office for a proper interpretation of the specifications and plans.

"I hope to hear from them in the near future.

"It is my thought that you should be paid for the asphalt plank and the deck timbers. However, we must wait until Springfield gives us the proper interpretation in regard to these items." * * *

This letter was signed by Kendrick Harger, District Engineer. In his testimony, the witness, Balkin, said "We have a letter under date of April 20, 1935, in which the District Engineer's office says definitely that in their judgment we should be paid for the asphalt plank." This probably was the opinion of Kendrick Harger, the District Engineer, but very definitely he did not undertake and did not commit the State Highway Engineer's office to that sentiment.

Final payment in the sum of $4,470.60 was made to the Duffin Iron Company, assignee of claimant on December 26, 1935, by warrant number 334902, and was mailed to said assignee on December 29, 1935, and on December 30, 1935, deposited in the First National Bank of Chicago by its president, John J. Duffin, and was marked paid by the State Auditor on December 31, 1935.

While an attempt has been made by experts to show that said work was not within the provisions of the contract, we must follow the universal rule that in the absence of any fraud, parole testimony cannot be received to change, vary or alter the terms of a written contract.

We are of the opinion that the contract contemplated this work which is classified as extra. While it may have been more work than the claimant expected, yet it appears that it was all within the terms of the contract and all duly paid for. Consequently, there is nothing due and owing, and with this view of the facts, it is unnecessary to pass upon the motion made by the State to dismiss.

An award, therefore, will be denied.